IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No: 23-CR-00400 (TJK) |
| v. | : | |
| | : | 18 U.S.C. § 111(a)(1) |
| BRYAN BISHOP, | : | |
| Defendant. | : | |

**STATEMENT OF OFFENSE**

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, BRYAN BISHOP, with the concurrence of his attorney, agree and stipulate to the factual basis below for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States

Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m.  Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary, and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building.  The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the

crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Bishop's Participation in the January 6, 2021, Capitol Riot*

8. On January 6, 2021, by approximately 2:00 p.m., rioters had breached various barriers that had been erected on the west side of the U.S. Capitol building and were attempting to overwhelm police officers positioned there. At approximately, 2:02 p.m., the defendant, Bryan Bishop, emerged from the crowd of rioters on the West Plaza and aimed a chemical irritant cannister at the line of officers. Bishop sprayed Metropolitan Police Department ("MPD") Officer A.A. directly in the face with an orange-colored chemical irritant. Bishop then sprayed a second MPD Officer, Officer B.S., in the face shield, aiming the spray at an upward angle in order to spray under Officer B.S.'s face shield and directly into his face, immediately causing

Officer B.S.'s eyes to burn and causing Officer B.S. to be unable to see for the next seven to ten minutes.

9. After spraying the officers on the West Plaza, Bishop entered the U.S. Capitol building at approximately 2:39 p.m. Bishop walked amongst various rooms of the Capitol building to include the Rotunda, Statuary Hall, and the Statuary Hall Connector. After approximately 17 minutes, Bishop exited the Capitol building at approximately 2:56 p.m.

10. Bishop knew at the time he entered the U.S. Capitol building that he did not have permission to enter the building.

### *Elements of the Offense*

11. The parties agree that Assaulting, Resisting, or Impeding Certain Officers (18 U.S.C. § 111(a)(1)) requires the following elements:

*First*, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with B.S., an officer from the Metropolitan Police Department.

*Second*, the defendant did such acts forcibly.

*Third*, the defendant did such acts voluntarily and intentionally.

*Fourth*, Officer B.S. was assisting officers of the United States who were then engaged in the performance of their official duties.

*Fifth*, the defendant made physical contact with Officer B.S. and/or acted with the intent to commit another felony. For purposes of this element, "another felony" refers to the offenses charged in Counts Two and Three.

### *Defendant's Acknowledgments*

12. Bishop knowingly and voluntarily admits all the elements of 18 U.S.C. § 111(a)(1) as set forth above. Specifically, Bishop admits that he assaulted, resisted, opposed,

impeded, intimidated, or interfered with MPD Officer B.S., by spraying Officer B.S. in the face with a chemical irritant and that he did such acts forcibly, voluntarily, and intentionally. Bishop admits that, when he engaged in the conduct described in paragraph 8, he knew that Officer B.S. was engaged in the performance of his official duties and an officer from the MPD who was assisting the USCP to secure the U.S. Capitol. Bishop further admits that, in assaulting Officer B.S., he used a deadly or dangerous weapon – a chemical irritant – and that he used the weapon intentionally and caused bodily injury to Officer B.S., when the irritant made physical contact with Officer B.S.'s eyes.

    Respectfully submitted,

    MATTHEW M. GRAVES  
    UNITED STATES ATTORNEY  
    D.C. Bar Number 481052

By: *s/Sonia W. Murphy*  
    SONIA W. MURPHY  
    Trial Attorney  
    D.C. Bar No. 483072  
    U.S. Attorney's Office for the District of Columbia  
    601 D Street, N.W.  
    Washington, D.C. 20530  
    Phone: (202) 305-3067  
    Email: Sonia.Murphy@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, BRYAN BISHOP, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 4-15-24

BRYAN BISHOP
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 04/08/2024

Lionel Andre
LIONEL ANDRE
Attorney for Defendant

Signature:

Email: brtjbisop@proton.me